IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TA'SAUNA HUNT, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| STEWART COUNTY, TENNESSEE, | ) | |
| LIEUTENANT RICKY ROBERTSON, in his | ) | |
| individual capacity, and SHERIFF FRANKIE | ) | |
| GRAY, in his individual capacity, | ) | |
| | ) | |
| *Defendants.* | | |

## COMPLAINT

Plaintiff Ta'Sauna Hunt ("Ms. Hunt" or "Plaintiff") alleges the following claims against Stewart County, Tennessee ("Stewart County"), Lieutenant Ricky Robertson, in his individual capacity ("Lt. Robertson"), and Sheriff Frankie Gray, in his individual capacity ("Sheriff Gray") (collectively, "Defendants"):

### <u>INTRODUCTION</u>

1. This action is brought by Ms. Hunt against Defendants for discrimination, harassment, and retaliation in violation of both her constitutional rights and Tennessee law.

2. Specifically, throughout her employment with the Stewart County Sheriff's Office, Ms. Hunt was subjected to racial slurs, gendered insults, and hate speech, which created a hostile work environment. Defendants failed to correct the hostile work environment, even after Ms. Hunt's numerous complaints to her supervisors and to Sheriff Gray himself. Instead, Lt. Robertson—with Sheriff Gray's approval—terminated Ms. Hunt in direct retaliation for her complaints about discrimination and harassment. Then, shortly after terminating Ms. Hunt, Lt.

Robertson sent her a letter threatening to press criminal charges against her based on false allegations.

## PARTIES, JURISDICTION, AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(4), and § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred within this District.

5. Ms. Hunt is a Black woman and resident of Tennessee.

6. Defendant Stewart County, Tennessee is a governmental entity.

7. Defendant Lt. Ricky Robertson is the Personnel Lieutenant in the Correctional department of the Stewart County Sheriff's Department.

8. Defendant Sheriff Frankie Gray is the Sheriff of the Stewart County Sheriff's Department.

9. In Tennessee, sheriffs are elected officials. *See* Tenn. Const. art. VII, § 1. Sheriff Gray was most recently elected to his position in 2022.

## STATEMENT OF FACTS

10. Ms. Hunt worked as a Correctional Deputy for the Stewart County Sheriff's Office from August 15, 2024 until November 17, 2024.

11. As a teen, Ms. Hunt met a School Resource Officer who positively impacted her life. As a result, she pursued a career in law enforcement.

12. Ms. Hunt was excited to work for the Stewart County Sheriff's Office because it brought her a step closer to achieving her career goals.

13. Furthermore, Ms. Hunt was an excellent employee.

14.     Unfortunately, Ms. Hunt's time working for the Stewart County Sheriff's Office was marred by the harassment, discrimination, and retaliation committed by the white male employees of the Stewart County Sheriff's Office. At all times relevant to this lawsuit, Ms. Hunt was subjected to racist slurs, sexual insults, and an overall pervasively hostile environment.

15.     During her employment, Ms. Hunt was the only non-white employee who worked for the Correctional division of the Stewart County Sheriff's Office

16.     Ms. Hunt reported all the following incidents to Sergeant Logan Dennis ("Sgt. Dennis"), Lieutenant Ricky Robertson ("Lt. Robertson"), and/or Captain Samuel Mills ("Capt. Mills").

17.     On or around September 14, 2024, while working with Correctional Deputy Derek Guth ("Deputy Guth"), Ms. Hunt inadvertently dropped a food tray. Deputy Guth then aggressively moved the food cart—nearly colliding with Ms. Hunt—and said, "If you would have [fallen], [the Captain] would have watched [and] laughed at you and called you a pussy!"

18.     The same night, while Ms. Hunt continued working with Deputy Guth, she asked him a question about how inmates obtain razors. Deputy Guth replied, "We pass them out. How the fuck you think they get them?" Plaintiff tried to ignore his hostile remark, but as she and Deputy Guth passed out medications, he continued to harass her, saying, "You're quiet." When she ignored him, he asked, "Why are you such a fucking cunt monkey?"

19.     Ms. Hunt then texted Capt. Mills and Lt. Robertson in a group message and told them she was called a "pussy" and a "cunt monkey." Captain Mills dismissively responded, "I get the feeling from this message that you are angry . . . If you have been mistreated by a coworker, make a report and pass it on to your supervisor . . . Guth can be an immature little prick." When Ms. Hunt responded and said her supervisor (Sgt. Dennis) was not at work, Lt. Robertson

responded, "Yes, please make a report of the incident and turn it in to [Sgt.] Dennis tomorrow when you get to work. [Capt. Mills] and myself will look into it."

20.     The next day, Ms. Hunt (as instructed) submitted a written complaint to Sgt. Dennis. The complaint stated: "I have been working as Deputy here for approximately 4 to 5 weeks. I enjoy working at this facility[,] but I am having issues on my shift being called racial slur[s] and [] being brushed off[.]." She reported that Deputy Guth called her a "fucking cunt monkey" in front of a pod of female inmates. She ended the letter by stating, "I am asking for an intervention to find a solution to this problem and to establish a professional, friendly, and productive environment for all of us."

21.     No one followed up with Ms. Hunt regarding this complaint.

22.     Defendants conducted no investigation and took no corrective action regarding this complaint.

23.     While Ms. Hunt tried to maintain a positive attitude and tolerate the antagonistic working conditions, her environment became increasingly hostile.

24.     On or around September 28, 2024, while working with Deputy Michael Lorden Jr. ("Deputy Lorden") and Deputy Guth, Ms. Hunt was filling her water cup in the darkened break room. Deputy Lorden and Deputy Guth entered the room and Deputy Guth said, "Hunt, where are you?" Ms. Hunt replied, "I'm over by the fridge. It's dark. That's probably why you can't see me." Deputy Lorden responded, "It's cause you're fucking Black. That's why we only see your eyes, cause you're too fucking Black." He then turned to Deputy Guth and asked, "Was that too far?" Deputy Guth replied, "Yeah, you definitely took that too far." They both then began laughing.

25.     On another occasion, while training Ms. Hunt, Deputy Lorden began making demeaning comments about Ms. Hunt's boyfriend and her "masculinity." Specifically, he said her

"boyfriend is too feminine, and you're too masculine to be a female, so in reality he's the bitch in your relationship."

26.     Upon information and belief, Deputy Lorden stalked Ms. Hunt's Facebook profile to learn information about her personal life (including the identity of her boyfriend).

27.     Ms. Hunt ignored the comment and walked away from Deputy Lorden, but he followed her and continued to harass her, saying, "I have seen the type of men you date. It seems you only date Black men—seems like really all you date are thugs."

28.     On yet another shift with Deputy Lorden, he tried to show Ms. Hunt a sex toy website. Disgusted, Ms. Hunt began to leave, but Deputy Lorden did not stop. He continued asking her to look at the sex toys with him, stating, "Hold on a sec, look at these. They have blue cloud dildos, dragons, they even have one shaped like a tongue."

29.     On another occasion, while in the middle of a shift change with Deputy Davis and Deputy Lorden, Deputy Davis told Ms. Hunt, "We can do the reverse slavery thing. I'll call you 'massa' and I'll work for you." Deputy Lorden then joined in, saying he would "make you my slave any day. You can come pick all the cotton from my yard."

30.     After suffering this continued harassment, Ms. Hunt wrote a letter to Sheriff Gray on or around October 28, 2024. The letter states, "Respectfully sir, I am struggling at this job. It has nothing to do with the actual job at hand but some of the things staff [have] said to me." She described Deputy Guth calling her a "fucking cunt monkey" and Deputy Lorden stating she was "too fucking Black" and would "make [her his] slave and you can pick the cotton out of my yard." She also reported Deputy Lorden stating, "it seems you only date Black men—seems like really all you date are thugs."

31.     Plaintiff's letter continued, "I am aware of the dark humor of cops, but I am not okay with 'joking' about my race and it is not funny . . . I don't need to be babied or given special treatment, [but] I would like my boundaries respected and I am asking for the black jokes [to stop] . . . That's all I'm asking[.]"

32.     On or around October 29, 2024, Ms. Hunt met in-person with Capt. Mills and Chief Deputy Dale Ward ("Chief Deputy Ward"), who assured her they would take corrective action to address her complaints. However, upon information and belief, neither Capt. Mills and/or Chief Deputy Ward took any action ever taken in response to her complaints. Instead, Capt. Mills simply told Ms. Hunt if she felt uncomfortable, she could record the situation using her phone.

33.     After the meeting with Capt. Mills and Chief Deputy Ward, Sheriff Gray called Capt. Mills, Deputy Guth, Deputy Lorden, Deputy Palmer, and Sgt. Dennis into a meeting and said, "The behavior on shift will not be tolerated." He did not explain, however, what "behavior" he was referring to.

34.     After this meeting, Ms. Hunt heard Deputy Guth, Deputy Lorden, and Sgt. Dennis discussing her complaints and the probable consequences.

35.     Sgt. Dennis stated, "All they are going to do is say, 'Lorden cleared, Lorden promoted to Corporal, and Hunt fired.'"

36.     In reality, that is ***exactly*** what happened next.

37.     On or around November 13, 2024, Stewart County asked Ms. Hunt to take a polygraph test to prove that she was not lying about being called racial slurs.

38.     Upon information and belief, Stewart County did not ask or require Deputy Lorden or any of her other white harassers to take a polygraph test.

39.     Furthermore, Stewart County had no policy, procedure, or practice regarding asking or requiring Sheriff's Office employees to submit to polygraph tests after complaints of discrimination and/or harassment.

40.     Ms. Hunt texted Capt. Mills and said she wanted to speak with Sheriff Gray and/or Chief Deputy Ward before reporting to work and submitting to the polygraph test. She told Capt. Mills she did not want to be treated a certain way "because of [her] skin tone."

41.     Stewart County did not, however, give Ms. Hunt the chance to speak with Sheriff Gray or Chief Deputy Ward. Instead, it cleared Deputy Lorden of any wrongdoing and terminated Ms. Hunt.

42.     On or around November 17, 2024, Lt. Robertson sent Ms. Hunt the following text in direct retaliation for her complaints: "I am sorry to have to inform you of this through text message, but based on your accusations against this department and your threats of litigation, I believe [it's] necessary . . . As of right now, your credentials have been revoked and until the sheriff says otherwise, you are no longer employed with the Stewart County Sheriff's Office."

43.     As evidenced by Lt. Robertson's text message, Sheriff Gray was the final policymaker with respect to terminations of employees in the Sheriff's Department.

44.     Sheriff Gray never "said otherwise"—in other words, he approved Ms. Hunt's termination.

45.     After Ms. Hunt's termination, Stewart County promoted Deputy Lorden to Corporal.

46.     Approximately 2.5 months later, Ms. Hunt received a letter from Lt. Robertson on Stewart County Sheriff's Office letterhead, stating she allegedly failed to return her Stewart County uniform shirt, handcuffs and handcuff case, duty belt, and security key fob.

7

47.     Ms. Hunt did not have any handcuff, handcuff case, or duty belt belonging to Stewart County. While working for Stewart County, she used her own handcuffs, handcuff key, and duty belt that she purchased with her personal funds before she began working for Stewart County.

48.     The letter threatened to "refer[] [this matter] to law enforcement for further action, including the issuance of a warrant" for her alleged theft.

49.     As a result of Defendants' unlawful acts, Ms. Hunt has been deprived of employment opportunities, which caused her to suffer economic losses, including lost wages and benefits.

50.     As a result of Defendants' unlawful acts, Ms. Hunt has experienced emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

51.     Based on the facts set forth above, Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to Ms. Hunt's federally protected rights.

### COUNT ONE: FIRST AMENDMENT RETALIATION
### IN VIOLATION OF 42 U.S.C. § 1983
### *Against Stewart County, Tennessee*

52.     Plaintiff incorporates Paragraphs 1 through 51 as if each has been fully stated herein.

53.     Plaintiff engaged in constitutionally protected speech when she complained about race and sex discrimination and harassment within the Stewart County Sheriff's Department.

54.     Plaintiff's speech was on a matter of public concern, because race- and/or or sex-based discrimination and harassment are inherently matters of public concern.

55.     Plaintiff's speech was not pursuant to her official duties.

56.     Plaintiff's interest as a citizen in speaking on these matters and bringing Defendants' wrongdoing to light outweighed Stewart County's interest as an employer in promoting the efficiency of the public services they performed through its employees.

57.     Sheriff Gray and Lt. Robertson, acting under color of state law, terminated Plaintiff because she complained about discrimination and harassment.

58.     Lt. Robertson, acting under color of state law, threatened Plaintiff with criminal prosecution based on false allegations of theft.

59.     The termination of Plaintiff would deter a person of ordinary firmness from engaging in constitutionally protected speech.

60.     The threat of criminal prosecution based on false allegations of theft would deter a person of ordinary firmness from engaging in constitutionally protected speech.

61.     Stewart County retaliated against Plaintiff for exercising her First Amendment right to free speech.

62.     Stewart County failed to adequately train either Sheriff Gray and/or Lt. Robertson on the laws prohibiting retaliation.

63.     As a result of these actions, Stewart County retaliated against Ms. Hunt for exercising her First Amendment right to free speech in violation of 42 U.S.C. § 1983.

64.     As a result of Stewart County's violations of § 1983, Ms. Hunt is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT TWO: FIRST AMENDMENT RETALIATION
## IN VIOLATION OF 42 U.S.C. § 1983
### *Against Sheriff Frankie Gray, in his individual capacity*

65.     Plaintiff incorporates Paragraphs 1 through 64 as if each has been fully stated herein.

66.     Plaintiff engaged in constitutionally protected speech when she complained about race and sex discrimination and harassment within the Stewart County Sheriff's Department.

67.     Plaintiff's speech was on a matter of public concern, because race- and/or or sex-based discrimination and harassment are inherently matters of public concern.

68.     Plaintiff's speech was not pursuant to her official duties.

69.     Plaintiff's interest as a citizen in speaking on these matters and bringing Defendants' wrongdoing to light outweighed Stewart County's interest as an employer in promoting the efficiency of the public services they performed through its employees.

70.     Sheriff Gray, acting under color of state law, terminated Plaintiff because she complained about discrimination and harassment.

71.     The termination of Plaintiff would deter a person of ordinary firmness from engaging in constitutionally protected speech.

72.     Sheriff Gray retaliated against Plaintiff for exercising her First Amendment right to free speech.

73.     Ms. Hunt had a clearly established right to exercise her free speech rights without retaliation, and a reasonable officer in Sheriff Gray's position knew or reasonably should have known that this retaliation would violate clearly established law.

74.     As a result of these actions, Sheriff Gray retaliated against Ms. Hunt for exercising her First Amendment right to free speech in violation of 42 U.S.C. § 1983.

75.     As a result of Sheriff Gray's violations of § 1983, Ms. Hunt is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

### COUNT THREE: FIRST AMENDMENT RETALIATION
### IN VIOLATION OF 42 U.S.C. § 1983
*Against Lt. Ricky Robertson, in his individual capacity*

76.     Plaintiff incorporates Paragraphs 1 through 75 as if each has been fully stated herein.

77.     Plaintiff engaged in constitutionally protected speech when she complained about race and sex discrimination and harassment within the Stewart County Sheriff's Department.

78.     Plaintiff's speech was on a matter of public concern, because race- and/or or sex-based discrimination and harassment are inherently matters of public concern.

79.     Plaintiff's speech was not pursuant to her official duties.

80.     Plaintiff's interest as a citizen in speaking on these matters and bringing Defendants' wrongdoing to light outweighed Stewart County's interest as an employer in promoting the efficiency of the public services they performed through its employees.

81.     Lt. Robertson, acting under color of state law, terminated Plaintiff because she complained about discrimination and harassment.

82.     Lt. Robertson, acting under color of state law, threatened Plaintiff with criminal prosecution based on false allegations of theft.

83.     The termination of Plaintiff would deter a person of ordinary firmness from engaging in constitutionally protected speech.

84.     The threat of criminal prosecution based on false allegations of theft would deter a person of ordinary firmness from engaging in constitutionally protected speech.

85. Lt. Robertson retaliated against Plaintiff for exercising her First Amendment right to free speech.

86. Ms. Hunt had a clearly established right to exercise her free speech rights without retaliation, and a reasonable officer in Lt. Robertson's position knew or reasonably should have known that this retaliation would violate clearly established law.

87. As a result of these actions, Lt. Robertson retaliated against Ms. Hunt for exercising her First Amendment right to free speech in violation of 42 U.S.C. § 1983.

88. As a result of Lt. Robertson's violations of § 1983, Ms. Hunt is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT FOUR: RETALIATION IN VIOLATION OF THE PUBLIC EMPLOYEE POLITICAL FREEDOM ACT, TENN. CODE ANN. § 8-50-601, *et seq.* *Against Stewart County, Tennessee*

89. Plaintiff incorporates by reference paragraphs 1 through 88 above as if each has been fully restated herein.

90. Ms. Hunt complained about race and sex discrimination and harassment to Sheriff Gray.

91. Sheriff Gray is an elected official.

92. After Ms. Hunt complained about race and sex discrimination and harassment to Sheriff Gray, Stewart County terminated Plaintiff and threatened her with criminal prosecution based on false allegations of theft.

93. Plaintiff's complaints about race and sex discrimination and harassment to Sheriff Gray were a substantial or motivating factor in Stewart County's decision to terminate Plaintiff and threaten her with criminal prosecution.

94.     As a result of these acts, Stewart County violated the Public Employee Political Freedom Act, Tenn. Code Ann. § 8-50-601, *et seq.*

95.     As a result of Stewart County's violations of the Public Employee Political Freedom Act, Ms. Hunt is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT FIVE: RETALIATION IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, TENN CODE ANN. § 4-21-101, *et seq.*
### *Against Stewart County, Tennessee*

96.     Plaintiff incorporates Paragraphs 1 through 95 above as if each has been fully stated herein.

97.     Plaintiff engaged in protected activity under the Tennessee Human Rights Act when she complained about race and sex discrimination and harassment.

98.     Defendant knew that Plaintiff had engaged in protected activity by reporting her concerns.

99.     After Plaintiff reported her concerns, Stewart County failed to take any corrective action; told her she would be required to take a polygraph test regarding her complaints of discrimination (whereas the similarly situated white perpetrators of the harassment were not asked to take polygraph tests); terminated her (whereas the similarly situated white perpetrators of the harassment remain employed by Stewart County); and threatened her with criminal prosecution based on false allegations of theft.

100.    By deliberately failing to take reasonable action to prevent and correct the unlawful actions described above and telling Plaintiff (and not her harassers) she would be required to take a polygraph test, Stewart County created a retaliatorily hostile work environment.

101.     Stewart County's retaliatory actions would discourage a reasonable person from reporting workplace discrimination and harassment.

102.     There was a causal connection between Plaintiff's protected activity and the adverse actions described above.

103.     As a result of these acts and omissions, Stewart County violated the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq*.

104.     As a result of Stewart County's violation of the THRA, Plaintiff is entitled to compensatory damages in an amount to be proven at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT SIX: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 and THE TENNESSEE HUMAN RIGHTS ACT, TENN. CODE ANN. § 4-21-101, *et seq*.**
***Against Stewart County, Tennessee***

105.     Plaintiff incorporates by reference paragraphs 1 through 104 above as if each has been fully restated herein.

106.     As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution and the Tennessee Human Rights Act (the "THRA").

107.     Plaintiff was qualified for the job she held with Stewart County.

108.     While employed by Stewart County, Plaintiff was subjected to discrimination because of her race, including, but not limited to, being told to take a polygraph test regarding her complaints of discrimination (whereas the similarly situated white perpetrators of the harassment were not asked to take polygraph tests) and being terminated while the similarly situated white male perpetrators of the harassment remain employed by Stewart County.

109.    Stewart County failed to adequately train and supervise its employees on the laws prohibiting race-based discrimination, as evidenced by the failure to correct the discrimination and harassment Plaintiff experienced (despite Plaintiff's many complaints), as well as its disparate treatment of Plaintiff as compared to her white counterparts.

110.    By discriminating against Plaintiff because of her race, Stewart County violated Plaintiff's federal constitutional rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from discrimination because of her race.

111.    As a result of these acts and omissions, Defendant violated 42 U.S.C. § 1983 and the Tennessee Human Rights Act, § 4-21-101, *et seq.*

112.    As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT SEVEN: RACIALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF
42 U.S.C. § 1983 and THE TENNESSEE HUMAN RIGHTS ACT,
TENN. CODE ANN. § 4-21-101, *et seq.*
*Against Stewart County, Tennessee***

113.    Plaintiff incorporates by reference paragraphs 1 through 112 above as if each has been fully restated herein.

114.    As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution and the Tennessee Human Rights Act (the "THRA").

115.    Throughout her employment, Plaintiff was subjected to unwelcome harassment based on her race by Stewart County employees.

116.   The harassment was humiliating and intimidating and was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

117.   Specifically, Plaintiff was subjected to racially offensive, severe, or pervasive insults and slurs on various occasions by white employees. The harassment included being called a "fucking cunt monkey," being called too "masculine" (invoking the stereotype of the "angry Black woman"), being criticized for dating Black men (called "thugs"), being called "too fucking Black," and being the subject of racist so-called "jokes" (including "jokes" about slavery).

118.   Stewart County failed to adequately train and supervise its employees on the laws prohibiting race-based harassment, as evidenced by the failure to correct the harassment Plaintiff experienced, despite its pervasiveness and Plaintiff's many complaints.

119.   Because Stewart County did not take Plaintiff's complaints seriously and did not take corrective action to resolve her concerns, it tolerated and encouraged a racially hostile working environment.

120.   As a result of these acts and omissions, Stewart County violated 42 U.S.C. § 1983 and the Tennessee Human Rights Act, § 4-21-101, *et seq*.

121.   As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT EIGHT: SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 and THE TENNESSEE HUMAN RIGHTS ACT, TENN. CODE ANN. § 4-21-101, *et seq.***
***Against Stewart County, Tennessee***

122.   Plaintiff incorporates by reference paragraphs 1 through 121 above as if each has been fully restated herein.

123.    As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution and the Tennessee Human Rights Act (the "THRA").

124.    Plaintiff was qualified for the job she held with Stewart County.

125.    While employed by Stewart County, Plaintiff was subjected to discrimination because of her sex, including, but not limited to, being asked to take a polygraph test regarding her complaints of discrimination (whereas the similarly situated male perpetrators of the harassment were not asked to take a polygraph test) and being terminated while the similarly situated male perpetrators of the harassment remain employed by Stewart County.

126.    Stewart County failed to adequately train and supervise its employees on the laws prohibiting sex-based discrimination, as evidenced by the failure to correct the discrimination and harassment Plaintiff experienced (despite its pervasiveness and Plaintiff's many complaints), as well as its disparate treatment of Plaintiff as compared to her male counterparts.  Through this inaction, Stewart County has tolerated and encouraged a hostile working environment.

127.    By discriminating against Plaintiff because of her sex, Stewart County violated Plaintiff's federal constitutional rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from discrimination because of her sex.

128.    As a result of these acts and omissions, Stewart County violated 42 U.S.C. § 1983 and the Tennessee Human Rights Act, § 4-21-101, *et seq.*

129.    As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT NINE: SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. § 1983 and THE
TENNESSEE HUMAN RIGHTS ACT, TENN CODE ANN. § 4-21-101, *et seq.*
*Against Stewart County, Tennessee***

130.    Plaintiff incorporates Paragraphs 1 through 129 above as if each has been fully stated herein.

131.    As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution and the Tennessee Human Rights Act (the "THRA").

132.    While employed by Stewart County, Plaintiff was subjected to unwelcome sexual harassment including, but not limited to, Deputy Lorden obsessing over, and criticizing her for, her dating preferences; Deputy Lorden stalking her Facebook profile; and Deputy Lorden showing her a website for adult toys.

133.    The harassing conduct arose from sexual interest and included explicitly sexual comments.

134.    The harassment was severe or pervasive. It altered the conditions of Plaintiff's employment and created an abusive work environment.

135.    Stewart County is liable for the harassment endured by Plaintiff because it failed to take prompt and appropriate remedial action to stop the harassment, even after Plaintiff complained.

136.    Stewart County failed to adequately train and supervise its employees on the laws prohibiting sexual harassment, as evidenced by the failure to correct the discrimination and harassment Plaintiff experienced (despite Plaintiff's many complaints).

137.    Stewart County is further liable for Plaintiff's harassment because it resulted in retaliation against Plaintiff, including her termination.

138.    As a result of these acts and omissions, Stewart County violated 42 U.S.C. § 1983 and the Tennessee Human Rights Act, § 4-21-101, *et seq.*

139.    As a result of Stewart County's violation of 42 U.S.C. § 1983 and the THRA, Plaintiff is entitled to compensatory damages in an amount to be proven at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT TEN: HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF 42 U.S.C. § 1983 and THE TENNESSEE HUMAN RIGHTS ACT, TENN CODE ANN. § 4-21-101, *et seq.***
***Against Stewart County, Tennessee***

140.    Plaintiff incorporates Paragraphs 1 through 139 above as if each has been fully stated herein.

141.    As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution and the Tennessee Human Rights Act (the "THRA").

142.    While employed by Stewart County, Plaintiff was subjected to harassment because of her sex, including, but not limited to, being called sexist slurs (for example, "pussy" and "cunt") and being called "too masculine to be a female."

143.    The derogatory and disparaging comments about Plaintiff were based on sex stereotypes about how women should or should not be.

144.    The harassment was severe or pervasive. It altered the conditions of Plaintiff's employment and created an abusive work environment.

145.    Stewart County is liable for the harassment endured by Plaintiff because it failed to take prompt and appropriate remedial action to stop the harassment, even after Plaintiff complained.

146.    Stewart County failed to adequately train and supervise its employees on the laws prohibiting sex-based discrimination, as evidenced by the failure to correct the discrimination and harassment Plaintiff experienced (despite Plaintiff's many complaints), as well as its disparate treatment of Plaintiff as compared to her male counterparts.

147.    Stewart County is further liable for Plaintiff's harassment because it resulted in retaliation, including termination.

148.    As a result of these acts and omissions, Stewart County violated 42 U.S.C. § 1983 and the Tennessee Human Rights Act, § 4-21-101, *et seq.*

149.    As a result of Stewart County's violation of 42 U.S.C. § 1983 and the THRA, Plaintiff is entitled to compensatory damages in an amount to be proven at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**COUNT ELEVEN: DENIAL OF EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT IN VIOLATION OF 42 U.S.C. § 1983**
*Against Sheriff Frankie Gray, in his individual capacity*

150.    Plaintiff incorporates by reference paragraphs 1 through 148 above as if each has been fully restated herein.

151.    As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution.

152.    While employed by Stewart County, Plaintiff was subjected to discrimination and harassment because of her race and sex, including, but not limited to, being called racial slurs (for example, "cunt monkey"); being called too "masculine" (invoking the stereotype of the "angry Black woman"); being criticized for dating Black men (called "thugs"); being called "too fucking Black;" being the subject of racist so-called "jokes" (including "jokes" about slavery); being asked to take a polygraph test regarding her complaints of discrimination (whereas the white male

perpetrators of the discrimination and harassment were not asked to take a polygraph test); and being terminated while the white male perpetrators of the discrimination and harassment remain employed by Stewart County.

153.    Sheriff Gray, acting under color of state law, implicitly authorized, approved, or knowingly acquiesced in the race- and sex-based discrimination and harassment when he failed to correct the discrimination and harassment Plaintiff experienced, despite Plaintiff's complaints made directly to him; failed to punish the perpetrators of the discrimination and harassment, despite their repeated violations of the same type; and when he terminated her while allowing the white male perpetrators of the discrimination and harassment to remain employed by Stewart County.

154.    By implicitly authorizing, approving, and/or knowingly acquiescing in the race- and sex-based discrimination and harassment Plaintiff experienced; failing to punish the perpetrators of the discrimination and harassment, despite their repeated violations of the same type; and terminating Plaintiff while allowing the white male perpetrators of the discrimination and harassment to remain employed by Stewart County, Sheriff Gray violated Plaintiff's federal constitutional rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from discrimination because of her race and sex.

155.    As a result of these acts and omissions, Sheriff Gray violated 42 U.S.C. § 1983.

156.    As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT TWELVE: DENIAL OF EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT IN VIOLATION OF 42 U.S.C. § 1983
### *Against Lt. Ricky Robertson, in his individual capacity*

157.    Plaintiff incorporates by reference paragraphs 1 through 156 above as if each has been fully restated herein.

158.    As a Black woman, Plaintiff is a protected class member under the Fourteenth Amendment to the United States Constitution.

159.    While employed by Stewart County, Plaintiff was subjected to discrimination and harassment because of her race and sex, including, but not limited to, being called racial slurs (for example, "cunt monkey"); being called too "masculine" (invoking the stereotype of the "angry Black woman"); being criticized for dating Black men (called "thugs"); being called "too fucking Black;" being the subject of racist so-called "jokes" (including "jokes" about slavery); being asked to take a polygraph test regarding her complaints of discrimination (whereas the white male perpetrators of the discrimination and harassment were not asked to take a polygraph test); and being terminated while the white male perpetrators of the discrimination and harassment remain employed by Stewart County.

160.    Lt. Robertson, acting under color of state law, implicitly authorized, approved, or knowingly acquiesced in the racial discrimination and harassment when he failed to correct the race- and sex-based discrimination Plaintiff experienced, despite Plaintiff's multiple complaints made directly to him; failed to punish the perpetrators of the discrimination and harassment, despite their repeated violations of the same type; and when he terminated her while allowing the white male perpetrators of the discrimination and harassment to remain employed by Stewart County.

161.     By implicitly authorizing, approving, and/or knowingly acquiescing in the race- and sex-based discrimination and harassment Plaintiff experienced; failing to punish the perpetrators of the discrimination and harassment, despite their repeated violations of the same type; and terminating Plaintiff while allowing the white male perpetrators of the discrimination and harassment to remain employed by Stewart County, Lt. Robertson has violated Plaintiff's federal constitutional rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from discrimination because of her race and sex.

162.     As a result of these acts and omissions, Lt. Robertson violated 42 U.S.C. § 1983.

163.     As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT THIRTEEN: DENIAL OF SUBSTANTIVE DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT IN VIOLATION OF 42 U.S.C. § 1983
### *Against Stewart County, Tennessee*

164.     Plaintiff incorporates by reference paragraphs 1 through 163 above as if each has been fully restated herein.

165.     Plaintiff had a liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose.

166.     Plaintiff was terminated because of her race, her sex, and/or because she exercised her First Amendment right to free speech.

167.     Plaintiff's termination was arbitrary and capricious, and contrary to both the Equal Protection Clause of the Fourteenth Amendment and her First Amendment right to free speech.

168.     Stewart County failed to adequately train and supervise its employees on the laws prohibiting race- and sex-based discrimination and harassment and retaliation, as evidenced by the failure to correct the discrimination and harassment Plaintiff experienced, despite Plaintiff's many complaints, and its termination of Plaintiff for her race, sex, and/or in retaliation for exercising her First Amendment right to free speech. Through this inaction, Stewart County has tolerated and encouraged a discriminatory and retaliatory working environment.

169.     As a result of these acts and omissions, Stewart County deprived Ms. Hunt of her substantive due process right to not be terminated from governmental employment for a constitutionally impermissible purpose, as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

170.     As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT FOURTEEN: DENIAL OF SUBSTANTIVE DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT IN VIOLATION OF 42 U.S.C. § 1983
### *Against Sheriff Frankie Gray, in his individual capacity*

171.     Plaintiff incorporates by reference paragraphs 1 through 170 above as if each has been fully restated herein.

172.     Plaintiff had a liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose.

173.     Plaintiff was terminated because of her race, sex, and/or because she exercised her First Amendment right to free speech.

174.     Plaintiff's termination was arbitrary and capricious, and contrary to both the Equal Protection Clause of the Fourteenth Amendment and her First Amendment right to free speech.

175.     As a result of these acts and omissions, Sheriff Frankie Gray deprived Ms. Hunt of her substantive due process right to not be terminated from governmental employment for a constitutionally impermissible purpose, as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

176.     As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

### COUNT FIFTEEN: DENIAL OF SUBSTANTIVE DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT IN VIOLATION OF 42 U.S.C. § 1983
*Against Lt. Ricky Robertson, in his individual capacity*

177.     Plaintiff incorporates by reference paragraphs 1 through 176 above as if each has been fully restated herein.

178.     Plaintiff had a liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose.

179.     Plaintiff was terminated because of her race, sex, and/or because she exercised her First Amendment right to free speech.

180.     Plaintiff's termination was arbitrary and capricious, and contrary to both the Equal Protection Clause of the Fourteenth Amendment and her First Amendment right to free speech.

181.     As a result of these acts and omissions, Lt. Robertson deprived Ms. Hunt of her substantive due process right to not be terminated from governmental employment for a constitutionally impermissible purpose, as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

182.    As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## RELIEF REQUESTED

1. A jury to try her claims.

2. Entry of judgment in favor of Plaintiff, and against Defendants, for compensatory damages in an amount to be proven at trial.

3. Entry of judgment in favor of Plaintiff for back pay, front pay, and other equitable relief.

4. An award of Plaintiff's costs, reasonable attorney's fees, and pre- and post-judgment interest.

5. An entry of judgment for Plaintiff, and against Sheriff Frankie Gray and Lt. Ricky Robertson, for punitive damages in an amount to be proven at trial.

6. Any other legal or equitable relief to which Plaintiff may be entitled.


<u>Dated:</u>    May 2, 2025                Respectfully submitted,

**JESSE HARBISON LAW, PLLC**

*/s/ Jesse Ford Harbison*
Jesse Ford Harbison, BPR No. 032105
P.O. Box 68251
Nashville, TN 37206
(629) 201-7284
jesse@jesseharbisonlaw.com

**HUNTER LAW FIRM, PLC**

*/s/ Anne Bennett Hunter by JFH w/ permission*
Anne Bennett Hunter, BPR No. 02407
5115 Maryland Way, Suite 125
Brentwood, TN 37027
(615) 595-2977
anne@hunteremploymentlaw.com

*Counsel for Plaintiff Ta'Sauna Hunt*